IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ANTIONE BOYCE | * * * * * | |
| v. | * * | Civil No. CCB-11-3451<br>Criminal No. CCB-07-0383 |
| UNITED STATES OF AMERICA | * * * | |

******

## MEMORANDUM

Petitioner Antione Boyce has filed a motion, pursuant to 28 U.S.C. § 2255, to vacate his conviction and sentence. The court has reviewed all of the briefs. For the reasons stated below, Boyce's motion will be denied.

## BACKGROUND

On August 21, 2007, Boyce was indicted for Hobbs Act conspiracy, 18 U.S.C. § 1951(a), conspiracy to distribute narcotics, 21 U.S.C. §§ 841, 846, possession of a firearm by a felon, 18 U.S.C. § 922(g)(1), and possession of a firearm in furtherance of those crimes, 18 U.S.C. § 924(c). The charges arose from Boyce's involvement in a scheme to rob a drug dealer. He was ultimately convicted on all four counts.

The evidence introduced at trial, which began May 5, 2008, included the following: Alonzo McLaughlin, who was cooperating with the government, made contact with one of Boyce's co-defendants, Rahsean Holmes, during the summer of 2007. (Trial Tr. Day 2 at 218:1-219:13.) At that time, Holmes proposed to McLaughlin that they rob other drug dealers and use the help of "Dallas," whom McLaughlin identified as Boyce, in doing so. (*Id.* at 222:11-225:22; *see also* Trial Tr. Day 3 at 151:13-1533:13 (noting a later discussion in which another co-

1

defendant mentioned Boyce as someone who could help with the planned robberies).)

McLaughlin relayed this information to Drug Enforcement Agency ("DEA") agents with whom he was working, and the agents instructed him to continue spending time with Holmes and to convey that he, McLaughlin, was interested in participating in the robberies. (*Id.* at 223:21-24, 227:5-23.) As he spent time with Holmes, McLaughlin gathered information that revealed Boyce and Holmes had worked together to traffic and sell cocaine, as well as to rob other drug dealers. (*E.g.*, Trial Tr. Day 2 at 228:9-21; Trial Tr. Day 3 at 5:5-21, 150:4-21, 154:10-155:13, 156:15-24.)

As Holmes was planning two home invasions and robberies, the DEA had McLaughlin tell Holmes about a fictionalized associate of McLaughlin's who would be coming into town with eight to ten kilograms of cocaine and marijuana. (Trial Tr. Day 4 at 39:10-42:17.) Holmes expressed an interest in robbing the associate and began making preparations. (*Id.* at 42:3-7, 42:23-43:10.) On August 15, 2007, McLaughlin told Holmes they could rob the "drug dealer" that day. Holmes reached out to Boyce and another co-defendant to help, (*id.* at 52:20-23, 53:13-19), and told McLaughlin they would use Boyce's van, as well as get guns and handcuffs from Boyce to restrain the victims, (*id.* at 62:3-23, 63:2-14, 66:9-16). McLaughlin left Holmes and joined DEA agents at a hotel in Baltimore from which he sent Holmes a text telling him he saw six kilograms of cocaine, which the agents understood to be a signal to come to the hotel to commit the robbery. (*Id.* at 68:21-71:25.)

Detective William Denford, a task force officer with the DEA, was positioned near the hotel and had been directed to arrest Holmes and any associates who were with him when they arrived. (Trial Tr. Day 5 at 105:1-8, 107:2-10.) Detective Denford had been informed that Holmes would be driving a silver Chrysler. (*Id.* at 107:6-12.) He saw the Chrysler arrive, but

2

when a SWAT team positioned near the hotel attempted to stop it, the car began to flee. (*Id.* at 108:17-23, 234:12-20.) A high-speed chase ensued, during which the Chrysler hit two law enforcement vehicles. (*Id.* at 108:24-113:21.) Eventually, the Chrysler crashed into a pole and stopped. (*Id.* at 115:11-116:2.) At that time, Holmes and the passenger were removed from the car and arrested. (*Id.* at 117:15-21.)

DEA Special Agent Patrick McCurry was a passenger, along with other DEA agents, in a vehicle following the Chrysler as it fled police. (*Id.* at 233:3-23, 235:19-236:5.) As McCurry's vehicle was following the path of the Chrysler, he noticed a male subject attempting to conceal himself in the backyard of a corner house by crouching beside a child's playhouse. (*Id.* at 239:20-240:8, 242:21-243:2.) At trial, McCurry identified the person he saw crouching as Boyce. (*Id.* at 243:15-244:7.) Several civilian witnesses also testified to seeing Boyce in the neighborhood. (*Id.* at 165:16-167:13, 196:4-198:4, 208:19-211:14, 224:1-225:1.) One witness testified that she saw Boyce jump out of the Chrysler and then later offer to pay her money to walk with him to another road. (*Id.* at 208:19-209:11, 210:19-24.)

After the chase ended, McCurry and other agents returned to the backyard and recovered two loaded handguns—one from inside the playhouse and one leaned against the yard's fence. (*Id.* at 147:17-22, 248:19-22, 250:19-21, 251:15-16, 252:10-14.) Later, DEA investigators executed a search warrant for a residence of Boyce's family members. There, the investigators found Boyce's van—which Holmes proposed to use in the robbery and which he did use in an earlier controlled buy—and were able to operate it with keys recovered from the area of the earlier chase. (Trial Tr. Day 6 at 31:21-32:12.) They also found a kilo press, a device used to prepare cocaine for sale. (*Id.* at 39:1-24.) McLaughlin testified at trial that Boyce was known to have a kilo press. (Trial Tr. Day 4 at 67:10-22.)

3

**DISCUSSION**

Boyce raises several claims that he argues require this court to vacate his conviction or set aside his sentence. First, he claims the court erroneously enhanced his sentence pursuant to 21 U.S.C. § 851. Second, he claims his trial counsel was ineffective for 1) failing to subpoena alibi witnesses, 2) failing to argue that the government's evidence was insufficient to prove any of the counts for which he was convicted, and 3) failing to argue that his sentence could not be enhanced under 21 U.S.C. § 851. All of Boyce's claims fail.

**I.      Enhancement of Boyce's Sentence**

Boyce claims that the court improperly enhanced his sentence pursuant to 21 U.S.C. § 851 because the state convictions on which the enhancement was based are "misdemeanors" under state law. (Pet., ECF No. 247-1, at 11-12.) Boyce did not raise this claim on direct appeal, however, *see United States v. Holmes*, 376 F. App'x 346, 349-50 (4th Cir. 2010) (indicating Boyce challenged the enhancement of his sentence on the basis that the predicate convictions were not referenced in the indictment), which he seems to acknowledge, (*see* Pet. at 13 (noting that he is bringing the challenge under a claim of "actual innocence" so he does not have to demonstrate cause and prejudice)). By not raising it on direct appeal, and by failing to demonstrate cause and prejudice or his actual innocence, the argument is waived. *See United States v. Mikalajunas*, 186 F.3d 490, 492-94 (4th Cir. 1999).

Even if the argument cannot be said to be waived, it fails because the predicate convictions provided a proper basis for enhancement. Where a defendant is convicted of conspiracy to distribute and possess with the intent to distribute narcotics, as Boyce was here, 21 U.S.C. § 841(b)(1)(B) provides for a mandatory minimum sentence of five years and a maximum of forty years. Where, however, a defendant has a prior conviction for a felony drug offense, the

mandatory minimum is increased to ten years, and the mandatory maximum to life imprisonment. 21 U.S.C. § 841(b)(1)(B). A "felony drug offense" is defined as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State . . . that prohibits or restricts conduct relating to narcotic drugs." 21 U.S.C. § 802(44). The nominal classification of an offense as a "misdemeanor" does not determine whether it can be used as a predicate conviction, as Boyce argues. *See Burgess v. United States*, 553 U.S. 124, 129-30 (2008). It turns instead on the length of the maximum sentence the defendant faced in the prior proceeding and the offense's relation to drugs. Here, the court relied on two prior convictions for possession of a controlled substance which carried a penalty of up to four years imprisonment. (*See* Gov't Sentencing Mem., Am. Pet. Ex. C., ECF No. 260-3, at 2); *see also* Md. Code Ann., Crim. Law § 5-601 (formerly Md. Code Art. 27, § 287). The enhancement was thus not in error.

## II.     Ineffective Assistance of Counsel

To sustain a claim for ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth by the Supreme Court in *Strickland v. Washington*. 466 U.S. 668, 687 (1984). First, the petitioner must show "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. In evaluating such conduct, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Boyce has failed to meet the requirements of the *Strickland* test with respect to each of his ineffective assistance of counsel claims.[1]

---

[1] The court does not need to devote further discussion to Boyce's claim that his counsel at sentencing was ineffective by failing to argue that the enhancement of his sentence under 21 U.S.C. 851 was wrongful. As

5

**A. Failure to subpoena alibi witnesses.**

Boyce claims his trial counsel was ineffective because he did not call three alibi witnesses—Jerrie Parham, Otis Green, and Jerod Smith—who Boyce claims would have testified Boyce was with them during the August 15th sting operation.[2] (Pet. at 9-10.) According to Boyce, although he gave his counsel the witnesses' contact information, his counsel never interviewed them. (*Id.* at 10.) He further claims his counsel gave him the false impression during trial that he would call them to testify. (*Id.* at 10-11.)

Boyce has failed to show he was prejudiced by his counsel's failure to call Parham and Smith. Boyce and Parham state in their affidavits that Boyce left Parham's home at 3:15 p.m. on August 15th. (Boyce Aff., ECF No. 247-1, at 15; Parham Aff., ECF 260, at 21.) McLaughlin did not send the first text to Holmes, however, until 4:20 p.m., and Holmes sent a text to McLaughlin stating he had arrived at the hotel at 5:20 p.m. (Trial Tr. Day 5 at 93:17-20, 96:13-20.) Parham's testimony would have provided no evidence, therefore, of where Boyce was during the events at issue. He has therefore failed to show a reasonable probability that he would have been acquitted had she testified.

Boyce similarly has failed to show a reasonable probability of acquittal had Smith testified. The only evidence Boyce offers of Smith's likely testimony is Boyce's own self-serving statement that he was at Smith's home from 5:30 p.m. until 7:30 p.m. on August 15th. He has not provided any reason, however, why this would be credited over the compelling evidence introduced at trial. Four civilian witnesses and a DEA agent testified to seeing Boyce running, walking, or hiding in the area of the car chase during the chase or directly afterward—with one testifying to actually seeing Boyce get out of the car Holmes was driving. McLaughlin

---

discussed in Part I, the enhancement was proper under the law. Boyce is unable, therefore, to demonstrate he was prejudiced by any unreasonable failure to argue otherwise.

[2] Boyce provides no evidence of Green and Smith's likely testimony other than his own affidavit.

testified about Holmes and Boyce's prior work together to distribute cocaine and rob drug dealers and about Holmes' statements that Boyce would help with the August 15th robbery, as well as provide handguns and handcuffs to restrain the victims. Boyce has failed to meet his burden to demonstrate that he was prejudiced without Smith's testimony. *Cf. United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004) (finding a defendant was not prejudiced by his attorney's advice not to testify in his own defense where he offered no details explaining why the court would have given his testimony any weight).

Finally, counsel's failure to call Green was not outside the scope of reasonable assistance. Boyce's counsel told the court at trial that he interviewed Green and gave proper notice to the government that the defense would be calling him as an alibi witness. (Trial Tr. Day 6 at 146:11-21.) Boyce's counsel also attempted to subpoena Green for trial at addresses Green had provided, but he was at none of them. (*Id.* at 146:22-24.) He also could not find him by private process or by phone, as all the phone numbers Green had provided were out of service. (*Id.* at 146:24-147:2.) Boyce's counsel also noted that he was continuing to make efforts to find Green, even as trial progressed. (*Id.* at 147:3-7.) It is clear from the record that Boyce's trial counsel investigated Green's possible testimony and pursued multiple avenues of trying to bring him in to testify. Boyce claims his assistance nevertheless was deficient, however, because there is no evidence his counsel hired an investigator to go into Green's neighborhood or check his places of employment or known whereabouts. There is no support in the law that this court can find, or that Boyce has offered, however, for finding an attorney's assistance deficient where he investigated the claim—here, actually interviewing Green—notified the government that an alibi witness would be called, and made multiple attempts to produce the witness at trial. *Cf. Griffin v. Warden*, 970 F.2d 1355, 1358 (4th Cir. 1992) (finding deficient assistance where the

defendant's attorney took no steps to investigate or contact the proffered alibi witnesses and did not notify the government of them). That Boyce's counsel was ultimately unable to find Green at any of the addresses or phone numbers he provided does not render his assistance ineffective in this case.

### B. Failure to argue the government lacked sufficient evidence.

Boyce claims his trial counsel was also ineffective because he failed to argue that the government's evidence was insufficient to prove all the counts on which Boyce was convicted. First, Boyce's counsel did move for a judgment of acquittal at the close of the government's case on the grounds that the government's evidence was insufficient. (Trial Tr. Day 6 at 140:3-5); *see also* Fed. R. Crim. P. 29(a) (providing that, upon defense counsel's motion and at the close of the government's case, the court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.").

Second, even if this court were to find that his counsel acted unreasonably in not making a motion for a judgment of acquittal at another point in the trial or after Boyce's conviction by the jury, he has failed to demonstrate that he was prejudiced by such failures because Boyce has provided no evidence that the court would have granted such a motion.[3] A court considering a motion for judgment of acquittal must decide "whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond reasonable doubt." *United States v. MacCloskey*, 682 F.2d 468, 473 (4th Cir. 1982). "Substantial evidence" is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Strayhorn*, 743 F.3d 917, 925 (4th Cir. 2014).

---

[3] To the extent Boyce is arguing his appellate counsel was also ineffective for failing to raise these issues on appeal, (*see* Am. Pet. at 19), his claims fail for the same reasons discussed herein.

With this standard in mind, Boyce has failed to demonstrate a reasonable probability that, had his counsel made additional arguments of insufficiency, he would have been acquitted.

Boyce claims there was insufficient evidence to convict him of conspiracy to commit robbery in violation of the Hobbs Act because there was no evidence that he entered into an agreement with Holmes or others to rob the "drug dealer" on August 15, 2007.[4] (Pet. at 7-10.) Direct evidence that Boyce entered into an agreement was not necessary for the government to prove the existence of a conspiracy, however.  Circumstantial evidence is sufficient, and circumstantial evidence of a conspiracy "may consist of a defendant's relationship with other members of the conspiracy, the length of this association, [the defendant's] attitude [and] conduct, and the nature of the conspiracy." *United States v. Yearwood*, 518 F.3d 220, 226 (4th Cir. 2008) (alteration in original).  The government introduced compelling evidence that Boyce was involved in the August 15th incident:  Holmes stated he was going to use Boyce's help, guns, and handcuffs in completing the robbery. (Trial Tr. Day 4 at 52:20-23, 53:13-19, 62:3-23, 63:2-14, 66:9-16.)  One witness testified to having seen Boyce bail from the car driven by Holmes in the ensuing car chase. (Trial Tr. Day 5 at 208:19-209:11, 210:19-24.)  Boyce was seen trying to hide in the neighborhood where the car chase occurred. (*Id.* at 165:16-167:13, 196:4-198:4, 208:19-211:14, 224:1-225:1, 239:20-240:8, 242:21-243:2.)  Two loaded handguns were found where Boyce was seen hiding. (*Id.* at 248:19-22, 250:19-21, 251:15-16, 252:10-14.) Boyce had previously worked with Holmes to rob drug dealers and distribute cocaine. (*E.g.*, Trial Tr. Day 3 at 150:4-21, 154:10-155:13, 156:15-24.)  This evidence provided more than a

---

[4] In his reply to the government's opposition, Boyce appears to make the new argument that he could not have entered into an agreement to violate the Hobbs Act because McLaughlin, acting as a government informant, originally offered the idea to commit the robbery.  Boyce appears to be relying on case law holding that a person acting as a government agent cannot be a co-conspirator.  *See United States v. Strickland*, 245 F.3d 368, 386 (4th Cir. 2001).  His argument is without merit.  Even if McLaughlin offered the fictional drug dealer as a target for robbery, the evidence at trial demonstrated that Boyce worked with at least two other people, including Holmes, who were not informants.

9

sufficient basis for the jury to find beyond a reasonable doubt that Boyce entered into an agreement with Holmes and others to commit a robbery in violation of the Hobbs Act. He was not prejudiced by his attorney's failure to argue otherwise.

Boyce claims there was insufficient evidence to convict him of engaging in a conspiracy to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 846, because the drugs which he was convicted of conspiring to distribute—the drugs he and Holmes were going to steal on August 15, 2007—did not exist. (Am. Pet., ECF No. 260, at 10-12.) If Boyce were convicted of distribution or possession, his claim may have merit. He was convicted of *conspiring* to distribute and possess with the intent to distribute, however, (*see* Gov't Sentencing Mem., Am. Pet. Ex. C., ECF No. 260-3, at 1), and factual impossibility is not a defense to conspiracy, *United States v. Min*, 704 F.3d 314, 321-22 (4th Cir. 2013). Thus, as long as the government provided sufficient evidence to prove Boyce's entrance into an agreement to distribute or possess 500 grams or more of narcotics—which it did here—it is of no consequence that the subject narcotics were fictional.

There was overwhelming evidence that the drugs that were the subject of the planned August 15th robbery amounted to more than 500 grams.[5] McLaughlin and DEA agent Thomas Cindric testified that McLaughlin sent Holmes a text message telling him that the "drug dealer" they were to rob had six kilograms of cocaine, well above the 500 grams for which Boyce was convicted, and that Holmes responded "okay." (Trial Tr. Day 4 at 71:8-20; Trial Tr. Day 5 at 93:2-94:10.) Further, the government introduced ample evidence from which a jury could reasonably conclude that the purpose of the robbery was to obtain cocaine for later distribution: Holmes had previously stated he wanted to rob drug dealers to obtain cocaine for distribution,

---

[5] The court notes that Boyce originally was charged with conspiracy to distribute five kilograms or more of cocaine, but his attorney was able to convince the jury that he should only be convicted for conspiracy to distribute 500 grams or more, an offense carrying a much lower sentence.

(Trial Tr. Day 2 at 222:13-23), Boyce was known to have a "kilo press," a tool for separating cocaine into kilograms for distribution, (Trial Tr. Day 4 at 66:25-67:25; *see also* Trial Tr. Day 6 at 38:19-39:24 (testimony stating that a kilo press was found in Boyce's uncle's home, where Boyce was known to spend time)), and, as discussed above, Boyce and Holmes had a history of robbing drug dealers and engaging in cocaine trafficking and distribution activities, often in amounts much higher than 500 grams, (*see, e.g.*, Trial Tr. Day 3 at 156:15-24 (describing an instance in which Holmes, Boyce, and another co-defendant robbed a drug dealer of two kilograms of cocaine)). The government introduced sufficient evidence to convict Boyce and sufficient evidence to demonstrate the drug amount. He has failed to show he was prejudiced by any failure of his attorney to argue otherwise.

      Finally, Boyce claims there was insufficient evidence to convict him of the firearm counts because the government did not introduce testimony from anyone who actually saw him with the firearms. (Am. Pet. at 17.) Just as with the conspiracy charges, however, circumstantial evidence can provide a sufficient basis for the factfinder to conclude, beyond a reasonable doubt, that Boyce had the firearms, *see MacCloskey*, 682 F.2d at 473 (noting that substantial evidence can consist of circumstantial evidence), and the government provided substantial circumstantial evidence in this case. DEA agent McCurry saw Boyce crouching by a child's playhouse during the chase. (Trial Tr. Day 5 at 239:20-240:8, 242:21-243:2.) Upon returning to the area after the chase, the DEA agents recovered two handguns in and around the playhouse. (*Id.* at 147:17-22, 248:19-22, 250:19-21, 251:15-16, 252:10-14.) Holmes told McLaughlin that Boyce would provide guns for the robbery. (Trial Tr. Day 4 at 66:9-16.) Boyce has failed to demonstrate that he was prejudiced by any failure of his counsel to argue the evidence was insufficient.

## CONCLUSION

For the foregoing reasons, the court will deny Boyce's petition. A certificate of appealability under 28 U.S.C. § 2253(c) will not be issued.[6]  A separate order follows.

| | |
|---|---|
| April 29, 2014 | /s/ |
| Date | Catherine C. Blake |
| | United States District Judge |

---

[6] Boyce is free to seek a certificate of appealability from the Fourth Circuit.